1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| JAMES LEE BUFFIN, | ) | 1:08-cv-01343 GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

11
12
13
14
15
16
17
18

19                                    **BACKGROUND**

20        Plaintiff James Lee Buffin ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner") denying his application for supplemental

22  security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

23  the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24  Gary S. Austin, United States Magistrate Judge.[1]

25  //

26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On September 29, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

On or about November 2, 2005, Plaintiff filed an application alleging disability since January 1, 1998.  AR 96-98.  Plaintiff suffers from back pain, a learning disability and headaches.  AR 108.  His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 13, 61-71.  ALJ Stephen W. Webster held a hearing on October 26, 2007 , and issued an order denying benefits on December 26, 2007.  AR 17-23, 26-45.  On June 27, 2008, the Appeals Council denied review. AR 9-11.

Hearing Testimony

ALJ Webster held a hearing on October 26, 2007, in Fresno, California.  Plaintiff appeared and was represented by Melissa Proudian.[3]  Vocational Expert ("VE") Judith Najarian[4] also provided testimony.  AR 26.

Plaintiff was born May 22, 1980, and currently resides in Del Rey, California.  AR 29-30. He has four children, one of whom lives with he and his girlfriend.  AR 31.

Plaintiff does not have, nor has he ever had, a driver's license.  He relies on friends or his girlfriend for transportation.  AR 31.  He is able to care for his personal needs without assistance. AR 31.

When asked about helping around the house, Plaintiff indicated he is able to heat food in the microwave and fold and put away laundry.  He helps with his one month old daughter if he is able to do so.  AR 32.

About forty-five minutes of his day is spent watching television, and another forty-five minutes to an hour are spent listening to the radio.  He does not spend time on a computer.  AR 32.  Plaintiff visits with friends and family if they come to his home because he does not "get out

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3]The transcript of the hearing reflects representation by "Melissa Prudy" (AR 26), however, the representation agreement between Plaintiff and counsel reflects the proper spelling (AR 78-79).

[4]The transcript of the hearing reflects Judith "Nagerian" testified as the VE; however, the record references other instances of the correct spelling of Ms. Najarian's surname.  (AR 93-95.)

too much anymore." AR 33.  He does not go to the movies or attend church services because he cannot sit down for that period of time.  AR 33.  The majority of his day is spent at home, and he lies down for the greatest portion of that time.  AR 33.

Plaintiff attended school for ten years, but did not obtain a GED.  He received some minimal vocational training in 1997 or 1998 in mechanics.  AR 33.  He did not complete the training, thus he did not receive a certificate.  His father and brothers are all mechanics so he learned from them.  AR 34.  Plaintiff did not serve in the military.  AR 34.

From November 2004 to July 2005, Plaintiff served time in jail.  He has not worked since his incarceration date.  AR 34.  He does not receive welfare or food stamps, or other assistance.  AR 34.

Plaintiff suffers from back pain, headaches and a prior leg injury.  AR 34-35.  He also has a learning disorder, and when he was attending school, he was enrolled in special education classes throughout.  In the least year he attended high school, he was in regular classes and could not perform.  He did not return to school thereafter.  AR 35.

Plaintiff typically  receives treatment at University Medical Center ("UMC") as he does not have medical insurance coverage.  He is seen about every three months or so for a check up.  AR 35.  He has not received psychological counseling or treatment.  AR 36.

When asked to identify the location of his pain, Plaintiff indicated his back and right leg were painful.  He complained the pain medication puts him to sleep, and he will take a smaller dosage than that prescribed if he has something do so.  AR 36.  Plaintiff can sit for twenty minutes at a time and stand for thirty minutes at a maximum.  AR 37.  He can walk a "couple blocks" and can lift perhaps twenty to thirty pounds.  AR 37.

In response to whether he had worked in a position for more than six months in the past fifteen years, Plaintiff testified that he worked for his brother for a while in 2003 or 2004.  His brother owns his own plumbing business and Plaintiff would work in the shop, stocking small parts.  AR 37.  He worked in this position for about a year.  AR 38.

In 2004, Plaintiff had a problem with cocaine.  He last used in 2005.  AR 38.

1    Plaintiff testified that he does not "have a good attention span" and could focus for

2    perhaps a "couple hours" at a time depending upon his pain level.  AR 38.  After two hours or so,

3    he would need to lie down or take medication.  AR 39.  That break would be approximately one

4    to two hours before he could get up and resume concentration.  AR 39.  The medication

5    prescribed to Plaintiff causes drowsiness if he takes it as prescribed.  AR 39.

6    About once or twice a week, Plaintiff suffers from headaches.  They last until he "takes a

7    nap" or takes his medication.  Sometimes the nap and medication does not relieve the headache,

8    and on other occasions that course is successful.  AR 39-40.

9    Plaintiff can read a "little bit" in English and recalled that his reading was at a fifth grade

10   level when he was last in school.  AR 40.  He can use simple words to write a note because he

11   cannot spell. When asked if he could read street signs, Plaintiff replied, "[n]ot really."  AR 41.

12   With regard to depression, Plaintiff indicated he does not like to be around others, and

13   prefers to be in a room by himself.  AR 42-43.  He also suffers from hypertension.  AR 43.

14   VE Najarian conducted a review of the vocational file, and listened to testimony at the

15   hearing, but required additional information in order to describe Plaintiff's past relevant work.

16   AR 41.  Because the materials Ms. Najarian received indicated no previous work and Plaintiff

17   testified he worked for his brother for a period stocking plumbing materials, the VE determined

18   Plaintiff's past work included work as a stock clerk, unskilled and at light level due to the small

19   items, with a Dictionary of Occupational Titles ("DOT") code of 922.687-058.  AR 42.

20   The VE was asked to assume a hypothetical worker of claimant's age, education and

21   work history, with a limitation of simple, routine and repetitive work.  VE Najarian indicated this

22   person could perform Plaintiff's past relevant work as a stock clerk or parts picker.  AR 43.  In a

23   second hypothetical, the VE was also asked to assume a further limitation of the ability to lift

24   twenty pounds occasionally and ten pounds frequently.  This hypothetical worker could execute

25   Plaintiff's past relevant work as performed.  AR 44.  In a third hypothetical, the VE was asked to

26   assume the further limitation that the worker could only have occasional contact with the public,

27   in addition to the previous limitations.  The VE determined that the hypothetical worker could

28   perform Plaintiff's past relevant work.  AR 44.  Finally, the VE was asked to consider the

4

1 previous hypothetical factors, and the fact the worker would have occasional problems

2 maintaining attention, concentration and pace.  That worker, found the VE, would be unable to

3 perform Plaintiff's past relevant work in either the regional or national economy.  AR 44.

4     <u>Medical Record</u>

5     On January 23, 2006, Richard Engeln, Ph.D. performed a psychological evaluation of

6 Plaintiff.  Plaintiff reported he attended Ridgeman High School to the eleventh grade as a special

7 education student, but did not graduate.  He indicated he had "a couple" juvenile hall placements

8 and was placed in a juvenile probation group home for a year and a half before being discharged

9 at the age of eighteen.  As an adult, he has been incarcerated in the Fresno County and San

10 Joaquin County jail facilities.  At the time of the evaluation, Plaintiff was a resident of the

11 McKinley Home, a residential treatment facility, for the previous one or two months.  He was

12 also a resident of the Turning Point treatment facility following release from jail in Fresno

13 county.  His past included crack cocaine and marijuana usage, but he has been sober since

14 release.  Alcohol is not a problem.  AR 165.

15     Plaintiff has four children between the ages of one and five.  A three-month old daughter

16 passed away in March 2005 "from crib death."  AR 166.  The children live with their mother,

17 from whom Plaintiff is separated, in Fresno.  AR 166.  His mother died at the age of 41 of

18 cirrhosis of the liver and a sister was murdered at the age of 25.  AR 166.  He has occasional

19 contact with his father, stepmother and sister.  AR 165.

20     The doctor's evaluation notes that Plaintiff presented alert and oriented and there was no

21 evidence of delusions, hallucinations or confusion.  He was pleasant socially and exchanged

22 greetings with other waiting room visitors, having arrived ninety minutes early for his

23 appointment.  He was well-groomed.  Plaintiff's verbal expression was easily understood and

24 appropriate.  Intelligence testing revealed a verbal IQ score of 78, performance IQ of 76, and full

25 scale IQ of 75.  His working memory was low average.  Immediate and delayed auditory memory

26 were low average as was delayed visual memory.  Average scores were recorded for auditory

27 recognition delayed and immediate visual memory.  AR 166.  Reading grade equivalency was

28

third grade, spelling was first grade and math was third grade.  The doctor noted the academic

scores are lower than would be expected.  AR 167.

Dr. Engeln concluded that Plaintiff did not suffer from a mental or emotional illness.  His

verbal expressions were easily understood and appropriate, although his response style was quick

and impulsive.  He cooperated with presented tasks.  AR 167. The doctor diagnosed phase of life

adjustment as a young adult and polysubstance abuse in Axis I, and academic delay in Axis II.  It

was noted Plaintiff is capable of work "where instructions are unidimensional and normal

supervision is provided" based upon his verbal, cognitive and social abilities.  Plaintiff was

capable of receiving instructions of a one and two step nature; instructions of a technical or

complex nature were to be avoided.  A job with "academic components" would handicap

Plaintiff, but he had no psychological restrictions related to employment.  AR 168.

An April 4, 2006, Psychiatric Review Technique performed by James Derbin, M.D.,

noted that Plaintiff's learning disorder was not severe, however, mild limitations in social

functioning were present. AR 174-187.

The records regarding Plaintiff's treatment at UMC were also reviewed.  Plaintiff

complained of back pain (AR 189-190, 192, 199-203, 206-208), headaches (AR 191 ),

depression (AR 206) and shoulder and leg pain due to a motor vehicle accident (AR 194-197,

207).

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial activity since November

2, 2005, and had the severe impairment of a learning disorder.  AR 19.  The ALJ found however

that this severe impairment did not meet or equal a listed impairment requiring a finding of

disability.  AR 19.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the

residual functional capacity ("RFC") to perform his work without exertional limitations and has

the mental capacity to understand, remember and carry out simple one and two-step work

instructions. AR 19-20.

1    Given this RFC, the ALJ found that Plaintiff could perform his past relevant work as a

2    stock clerk.  In light of the fact Plaintiff's work history does not comport with the earnings

3    record, the ALJ performed step five in the sequential analysis.  AR 22.  To that end, the ALJ

4    determined Plaintiff was a younger individual with a limited education and ability to

5    communicate in English.  Because his past relevant work was unskilled, transferability was not

6    an issue.  In light of Plaintiff's age, education and work experience, the ALJ determined there

7    were significant jobs existing in the national economy that Plaintiff could perform.  AR 22-23.

8    Thus, the ALJ concluded that Plaintiff was not disabled.  AR 23.

9                                        **SCOPE OF REVIEW**

10    Congress has provided a limited scope of judicial review of the Commissioner's decision

11    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

12    the Court must determine whether the decision of the Commissioner is supported by substantial

13    evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

14    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

15    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

16    reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

17    401.  The record as a whole must be considered, weighing both the evidence that supports and

18    the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

19    995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

20    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

21    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

22    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

23    substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

24    Cir. 1987).

25                                          **REVIEW**

26    In order to qualify for benefits, a claimant must establish that he is unable to engage in

27    substantial gainful activity due to a medically determinable physical or mental impairment which

28    has lasted or can be expected to last for a continuous period of not less than twelve months.  42

7

1   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

2   such severity that he is not only unable to do her previous work, but cannot, considering his age,

3   education, and work experience, engage in any other kind of substantial gainful work which

4   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

5   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

6   Cir. 1990).

7       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

8   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

9   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  This five-step analysis can be summarized as

10  follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so

11  engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in

12  substantial gainful activity, determination of whether the claimant has a severe impairment; if

13  not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe

14  impairment, determination of whether any such severe impairment meets any of the impairments

15  listed in the regulations; if so, the claimant is disabled and the analysis ends; (4) if the claimant's

16  impairment is not listed, determination of whether the impairment prevents the claimant from

17  performing his or her past work; if not, the claimant is not presumed disabled and the analysis

18  ends; and (5) if the impairment prevents the claimant from performing his or her past work,

19  determination of whether the claimant can engage in other types of substantial gainful work that

20  exist in the national economy; if so, the claimant is not disabled and the analysis ends.

21      Here, Plaintiff argues that (1) the ALJ improperly concluded Plaintiff had past relevant

22  work; (2) the ALJ improperly relied upon the VE's testimony; and (3) the ALJ's RFC finding is

23  not supported by substantial evidence.  (Doc. 19 at 6-11.)

24  <u>**DISCUSSION**</u>

25  **A.**    ***Past Relevant Work***

26      Plaintiff contends the ALJ erred in concluding that Plaintiff's  work for his brother

27  between 1999 and 2004 was past relevant work because "substantial gainful activity" was

28  defined during that period as between $700 and $810 per month, and because the ALJ failed to

1   inquire about Plaintiff's earnings, whether he worked on a part-time or full-time basis, or

2   whether any special accommodation was made, the finding at step four is not supported by

3   substantial evidence and remand is required.  (Doc. 19 at 6-7.)  The Commissioner counters that

4   because the ALJ determined there was insufficient evidence at step four to conclude Plaintiff

5   could perform his past relevant work, and proceeded to an analysis at step five, Plaintiff's

6   argument is without merit.  (Doc. 22 at 6.)

7          The Commissioner's point is well taken.  The ALJ's findings include the following:

8                  Based on the claimant's testimony I find that he had past relevant work as
       a plumbing supply stocker.  Vocational expert Judith Najarian testified that as
9       generally performed, this job requires medium exertion and is unskilled, but that
       the claimant performed it at the light exertional level. [Ms.] Najarian testified that
10      an individual with the residual functional capacity outlined above would be able
       to perform this work.
11             *Since the claimant's work history is not substantiated on the earnings
       record*[5]*, he will be given the benefit of the full sequential analysis.*
12

13  AR 22, emphasis added.

14         The step four determination involves a comparison between the demands of the claimant's

15  former work and his present capacity.  *Villa v. Heckler*, 797 F.2d 794, 799 (9th Cir. 1986). It is

16  Plaintiff's burden to demonstrate that he is unable to return to his previous job, and if he is

17  unable to do so, the burden remains with him rather than shifting to the Secretary to proceed with

18  step five. *Matthews v. Shalala*, 10 F.3d 678 681 (9th Cir. 1993).  Plaintiff's argument regarding

19  the ALJ's finding at step four lacks merit for it was Plaintiff's burden to establish he was unable

20  to return to his previous position as a stock clerk such as he performed at his brother's plumbing

21  business.

22         At step four, the ALJ determines whether the impairments preclude claimant from

23  performing his past relevant work.  At step four, claimants have the burden of showing that they

24  can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto*

25  *v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  Although the burden of proof lies with the

26

27         [5]The earnings record for Plaintiff for the years from his birth through to the present establish Plaintiff
    earned $62.84 in 1997 from Stonework Partners and $204.00 in 2000 from Giant Burger.  No other wages were
28  reported.  AR 99-103.

claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his

conclusion. SSR 82-62; *Pinto v. Massanari*, *supra*, 249 F.3d at 844.

To be capable of performing his past relevant work, the claimant must be able to perform:

(1) the actual functional demands and job duties of a particular past relevant job; or (2) the

functional demands and job duties of the occupation as generally required by employers

throughout the national economy.  SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844.  The ALJ

may draw on two sources of information to define the claimant's past relevant work as actually

performed: (1) the claimant's own testimony, and (2) a properly completed vocational report.

*Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

At step four, a claimant has the burden of describing the physical and mental demands of

past work and of explaining any inability to return to it.  *See Pitchard v. Schweiker*, 692 F.2d 198

(1st Cir. 1982);  *Walters v. Commissioner of Social Sec.*, 127 F.3d 525 (6th Cir. 1997).  The duty

to inquire and make findings regarding a claimant's impairment as it relates to an ability to

perform past work does not mean that the initial burden of proving a disability by showing an

inability to perform past relevant work has been removed from the claimant. *Clem v. Sullivan*,

894 F.2d 328, 331-332 (9th Cir. 1990).

Here, Plaintiff testified as follows:

> [Plaintiff]: I worked for my brother for a while. That was - - it's been - -
> that was like 2003/04, something like that.
> [ALJ]: What did you do for him?
> A.  My brother is a private contractor.  He owns his own company; just
> pretty much I used to like shop work, stuff like that.
> Q.  Okay.  And what kind of shop?
> A.  It's a - - he does like plumbing - -
> Q.  Okay.
> A.  - - so maybe stock stuff and stuff like that.
> Q.  Okay.  And what kinds of thing would you lift?
> A.  That was - - they were all very small parts like - -
> Q.  Okay.
> A.  - - PVC piping and just fittings and stuff like that.
> Q.  Okay.  And how long did you do that?
> A.  For about a year maybe.

AR 37-38.  The ALJ's inquiry into Plaintiff's claimed past work for his brother was sufficient.

Morever, Plaintiff has failed to meet his burden because he did not explain how he would be

1  unable to return to work such as that he apparently performed in his brother's shop. *Pinto v.*

2  *Massanari*, 249 F.3d at 844; *Clem v. Sullivan*, 894 F.2d at 331-332.

3     In any event, assuming arguendo error occurred, the ALJ performed step five of the

4  sequential analysis. Because this Court found no error at step five, see discussion *post*, any error

5  at step four would be harmless. *Tomasetti v. Astrue*, 533 F.3d 1035, 1042-42 (9th Cir. 2008).

6     **B.    *VE Testimony***

7     Plaintiff contends the ALJ improperly relied upon the VE's testimony where the ALJ

8  stated an incomplete hypothetical regarding non-exertional limitations. (Doc. 19 at 7-8.) The

9  Commissioner asserts the ALJ's hypothetical was proper, and thus the ALJ's reliance on the

10  VE's testimony was proper. Additionally, the Commissioner asserts that even were the ALJ's

11  reliance on the VE's testimony error, it was harmless because the ALJ's finding is otherwise

12  supported by substantial evidence. (Doc. 22 at 6-10.)

13     The ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all

14  of the limitations that the ALJ found credible and supported by substantial evidence in the

15  record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required

16  to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

17  Cir.2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). The hypothetical should

18  be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094,

19  1101 (9th Cir. 1999).

20     The ALJ posed the following hypothetical questions to the VE:

21        [ALJ]: Okay. Ms. [Najarian], one or more hypothetical questions which I
      would like to ask you. The first one, would you please assume a hypothetical
22     person of the claimant's age, education, and work history, and assume that this
      hypothetical person was - - had no established exertional or postural limits, but
23     was limited to simple, routine, repetitive work. Could this person do any of the
      claimant's past relevant work as actually performed by claimant or generally
24     performed in the national economy?
         [VE]: Yes.
25        Q.  Okay. What did we - - what did you call that, stock something?
         A.  It's a parts picker or a stock.
26        Q.  Stock clerk?  Okay. If this - - the second hypothetical, same factors as
      in the first, but assume that the person was limited to lifting 20 pounds on
27     occasion and 10 [pounds] frequently, could this person do any of the claimant's
      past relevant work?
28        A.  As performed, not as typically found in the DOT - -

1
      Q.  Okay.
      A.  - - but as performed.

2
      Q.  Okay.  Third hypothetical, assume the same factors as in the first hypothetical, but assume that this person could - - would - - try that again.

3
Assume this person could only have occasional contact with the public, could this person do any of the claimant's past relevant work if this would be limited to

4
simple, routine, repetitive work, only occasional contact with the public?
      A.  From what I heard [], yes, he could do that job.

5
      Q.  All right.  Once again, assume the same factors as in number - - hypothetical number one, but assume that this person has occasional problems

6
maintaining attention, concentration, and pace.  Could this person do any of the claimant's past relevant work?

7
      A.  No.
      Q.  Any work in the regional or national economy?

8
      A.  No.

9
AR 43-44.

10
      As the Ninth Circuit noted in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th

11
Cir. 2008):

12
      As two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or

13
pace where the assessment is consistent with restrictions identified in the medical testimony. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir.2001) (where

14
state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain

15
sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's

16
hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace);

17
*Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding

18
quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).

19

20
      This Court finds the ALJ's hypothetical questions posed to the VE were consistent with

21
the record and accurately reflected the limitations supported by the record.  Thus, the ALJ's

22
findings are supported by substantial evidence and are free of legal error.

23
      **C.**    ***RFC & Limited Education Findings***

24
      Finally, Plaintiff asserts the ALJ's RFC determination is not supported by substantial

25
evidence and the ALJ erred in finding Plaintiff has a limited education rather than a marginal

26
one.  (Doc. 19 at 9-11.)  The Commissioner counters the argument is without merit because the

27
ALJ's RFC finding is supported by the observations of Dr. Engeln and the educational finding is

28
supported by the record.  (Doc. 22 at 10-11.)

1    In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's

2 findings as to claimant's ability.  20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i), 416.913(c),

3 416.927(f)(2)(I).  Thus, the ALJ could properly rely upon Dr. Engeln's findings.  More

4 particularly, Dr. Engeln concluded that

5    [v]erbally, cognitively, and socially Mr. Buffin is capable of job adjustment in a
     context where instructions are unidimensional and normal supervision is
6    provided.  He would be able to receive instructions that are one-to-two step in
     nature, but not technical or complex instructions.  He would be handicapped in
7    job requirements where academic components exist.  There are no psychological
     restrictions to job adjustment potential.
8

9 AR 168.  Plaintiff mischaracterizes Dr. Engeln's findings by stating Plaintiff "could not handle

10 any kind of academic function in the workplace." (Doc. 19 at 9.)  Dr. Engeln plainly found

11 Plaintiff capable of basic one or two step instructions, and allowed for Plaintiff's inability to

12 perform "technical or complex" tasks.  The ALJ concluded Plaintiff could perform unskilled

13 work.  Unskilled work is work "which needs little or no judgment to do simple duties that can be

14 learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

15    The ALJ's RFC finding is supported by substantial evidence and is free of legal error.

16    With regard to Plaintiff's argument that the ALJ's finding of a limited education[6] is

17 erroneous, this Court is not persuaded.  The ALJ specifically acknowledged Dr. Engeln's

18 findings regarding Plaintiff's reading and math skills, in addition to the scores pertaining to IQ

19 and memory.  AR 20.  The ALJ stated "I give substantial weight to the January 2006 consultative

20 psychological evaluation."  AR 21.

21

22

23
_____

24    [6]      (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language
              skills which are needed to do simple, unskilled types of jobs. We generally consider that formal
25            schooling at a 6th grade level or less is a marginal education.
              (3) Limited education. Limited education means ability in reasoning, arithmetic, and language
26            skills, but not enough to allow a person with these educational qualifications to do most of the
              more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th
27            grade through the 11th grade level of formal education is a limited education.
   20 C.F.R. § 416.964(b).
28

1   With each hypothetical posed to the ALJ, the VE was asked to assume an individual with

2   Plaintiff's educational background, and Plaintiff himself testified, in the VE's presence, about his

3   educational skills:

> 4  [ALJ]: The file indicates that you went to school for ten years.  Is that right?
> 5  [Plaintiff]: Pretty much, yeah.
>    Q.  Did you get a GED?
> 6  A.  No.
>    Q.  Have you taken any kind of vocational training at all?
> 7  A.  I did a little bit like in say '97/98.  I did a little vocational training.
>    Q.  Okay.
> 8  A.  Mechanics.
>    Q.  Okay.  Did you get any kind of certificate or anything like that?
> 9  A.  No, I never finished it. . . .
>    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> 10 Q.  Okay.  And did the doctors ever tell you that you have a learning disorder?
> 11 A.  Yes, I've been in special ed classes my whole life.
>    Q.  Okay.  Did you do all special ed or - -
> 12 A.  Yes.
>    Q.  Okay.
> 13 A.  Only - - my last year of high school was regular classes and I couldn't do it.  That's why I never went back to school to that.

14

15  AR 33-35.  In response to questioning by his attorney, Plaintiff indicated he could read and

16  understand some of the words in the newspaper, and recalled that he believed his reading skill

17  was at a "fifth grade level."  AR 40.  He can compose a message with "small words" but he

18  "can't spell."  Asked whether he could read street signs, Plaintiff replied, "[n]ot really."  AR 41.

19  All of the aforementioned testimony occurred in the VE's presence.

20   Education primarily refers to formal schooling or training which contributes to one's

21  ability to meet vocational requirements in areas such as reasoning ability, communication skills,

22  and arithmetical ability.  Here, according to the record, Plaintiff has ten or eleven years of formal

23  education.  AR 33, 165.  Because both the ALJ and the VE considered Plaintiff's education and

24  limitations, the ALJ did not err in concluding Plaintiff had a limited education.  *See*

25  *Smith v. Shalala*, 46 F.3d 45 (8th Cir. 1995) (where claimant had 8 years of education and

26  testified he could read and do simple calculation, his grade level controls); *Starks v. Bowen*, 873

27  F.2d 187 (8th Cir. 1989) (despite fact claimant could read and write only very simple messages

28  and that his achievement scores were below third grade, SSA finding that he was literate was

upheld); *Payne v. Barnhart*, 366 F. Supp. 2d 391 (W.D. Va. 2005) (ALJ did not err in crediting SSI claimant with high school education, where hypothetical presented to VE accurately reflected claimant's poor education and limited academic skills, regardless of whether she graduated from high school or not); *Lipson v. Barnhart*, 347 F. Supp. 2d 1182 (M.D. Ala. 2004) (in the absence of any evidence that the claimant's reading deficiencies had an impact on her ability to work, the ALJ did not err in finding that claimant, who completed the 10th grade, was not illiterate, despite test results purporting to indicate she could only read at less than 3rd grade level; claimant's employment history showed she had successfully held positions requiring her to perform intelligence-based tasks).

Lastly, even if this Court were to assume that Plaintiff has a "marginal education," he should still be able to perform the unskilled jobs identified by the VE.  *See* 20 C.F.R. § 416.964(b)(2) ("Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.").

In sum, the ALJ's finding is supported by substantial evidence and is free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, James Lee Buffin.


IT IS SO ORDERED.

**Dated:   November 24, 2009**                    /s/ **Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE